**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 00-31153
SUMMARY CALENDAR

_____

SHAWN LEMAIRE, Individually and as tutor on behalf of
Lemaire; MISTY T. LEMAIRE

Plaintiffs-Appellants

v.

DANOS & CUROLE MARINE CONTRACTORS INC; ET AL

Defendants

DANOS & CUROLE MARINE CONTRACTORS INC; CHARLES PHILLIPS

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Western District of Louisiana
(98-CV-51)

_____

July 10, 2001

Before REYNALDO G. GARZA, DAVIS, and DENNIS, Circuit Judges.

PER CURIAM:[1]

This dispute arises out of an accident that occurred on a production platform owned by Texaco, Inc. ("Texaco") off the coast of Louisiana[2]. Shawn Lemaire was disassembling a valve

---

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

[2]It is undisputed that the accident occurred more than three miles off the coast of Louisiana on the outer-continental shelf.

-1-

when the top of the valve blew off and struck Lemaire in the head.  Lemaire asserts he suffered a skull fracture, two lacerations, a severed nerve, severe headaches, dizziness, and nerve problems.  Lemaire brought suit against another man who was working on the platform, Charles Phillips, & Phillip's employer Danos & Curole Marine Contractors under the Outer Continental Lands Shelf Act, 43 U.S.C. § 1331, et seq.  Phillips moved for summary judgment on the ground that he and Lemaire are co-employees, and, therefore, he is immune from suit by a co-employee under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq.  Danos & Curole Marine Contractors moved for summary judgment on the ground that both Phillips and Lemaire were Texaco's borrowed employees, and, therefore, any negligence on the part of Phillips cannot be imputed to Danos & Curole Marine Contractors.

The district court granted the defendants' motions for summary judgment.  Having read and considered the record and arguments of counsel, we AFFIRM the decision of the district court based on its memorandum opinion which is attached hereto as Appendix A.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

SHAWN LEMAIRE, ET AL          CIVIL ACTION NUMBER: 98-0051

VERSUS                        JUDGE DOHERTY

DANOS & CUROLE MARINE         MAGISTRATE JUDGE METHVIN

<u>MEMORANDUM RULING</u>

Before this Court is a Motion for Summary Judgment [doc. #37] filed on behalf of defendants, Danos & Curole Marine Contractors, Inc. ("D&C") and Charles Phillips ("Phillips"). Defendants' Motion for Summary Judgment is based upon their contention there is no genuine issue of material fact as to whether Shawn LeMaire ("LeMaire") and Phillips are the borrowed employees of Texaco, Inc. ("Texaco") and therefore, co-employees as defined by the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. ("LHWCA").

In summary, defendants, D&C and Phillips, assert that, as a matter of law, LeMaire and Phillips are the borrowed employees of Texaco and that LeMaire is barred from any recovery against his co-employee, Phillips. Defendants further assert plaintiff's claims against defendants, D&C and Phillips, pursuant to the Outer Continental Lands Shelf Act, 43 U.S.C. § 1331, et seq. ("OCLSA") and the LHWCA should be dismissed on the basis that LeMaire and Phillips are borrowed employees of Texaco and thus, co-employees under the LHWCA. Pursuant to the LHWCA, Phillips

and Phillips' nominal employer, D&C, would be immune from tort liability as any negligence on Phillips' part would be imputed to Texaco as Phillips' borrowing employer, and not to D&C, Phillips' nominal employer.

In opposing this motion, plaintiff asserts those sections of the LHWCA granting immunity from tort liability to co-employees should not apply. Rather, the OCSLA, 43 U.S.C. § 1333, requires that state law be applied regarding third party negligence or immunity and damages. Plaintiff also asserts there are genuine issues of material fact as to whether LeMaire and Phillips were "borrowed employees" of Texaco. Plaintiff further asserts genuine issues of material fact exist as to whether LeMaire was a "co-employee" of D&C's employee, Phillips, within the meaning of the LHWCA, 33 U.S.C. § 901, et seq.

To rule on defendants' motion, the Court must determine whether LeMaire and/or Phillips were the borrowed employees of Texaco as a matter of law, and thus, co-employees of Texaco as defined by the LHWCA.

### Background

On or about December 14, 1996, Shawn LeMaire, plaintiff, was employed by Steen Production Services, Inc. ("Steen") as a C Operator. Plaintiff was working at a job site owned by Texaco, Inc. ("Texaco") in the Gulf of Mexico on a fixed platform located at West Cameron Block 643-B. LeMaire dep. pgs. 37, 74. It is

undisputed that the platform is located more than three miles off the coast of Louisiana on the outer continental shelf.

Prior to his alleged accident, LeMaire had worked continuously in the Texaco 643 field for approximately three months. LeMaire dep. p. 37. On the day plaintiff was allegedly injured, LeMaire was assisting defendant Charles Phillips ("Phillips"). Phillips was an employee of defendant, Danos & Curole Marine Contractors, Inc. ("D&C"). Phillips usually worked the opposite shift of LeMaire. However, on this particular shift, Phillips stayed on the platform for additional days because another person was off. LeMaire depo. p. 94; Ardoin & Flice depo., pps. 28-30. Prior to LeMaire's alleged accident, Phillips had worked continuously in the Texaco 643 field for one year. Phillips dep. pgs. 10, 41; Solar, a representative of Steen, dep. p. 35.

On the day of the alleged accident, Phillips was removing the last bolt from a Series 357 Control Valve when he became tired. Plaintiff began to help Phillips remove the bolt when the valve blew off and struck plaintiff in the head and knocked him backwards on to the grating causing him to injure his head, neck and back. Plaintiff asserts that as a direct result of this accident, he sustained injuries including a skull fracture, two lacerations requiring stitches, a severed nerve, severe headaches, dizziness and nervous problems.

It is undisputed that at the time of LeMaire's alleged accident, both D&C and Steen were under contract with Texaco to provide employees to operate Texaco platforms offshore and work as directed by Texaco employees. LeMaire dep. p. 37; Solar dep. p. 12. While on the Texaco project, LeMaire and Phillips normally worked schedules of seven days on and seven days off. Phillips dep. p. 37; LeMaire dep. p. 38. Texaco provided their sleeping quarters, their meals and their transportation to and from the job. Phillips dep. p. 36; LeMaire dep. pgs. 44-45, 55-56, 64. Phillips' immediate supervisor was Texaco Lead Operator, Kenneth Domingue. Phillips dep. pgs. 39-40. However, because Phillips had agreed to work over his seven day shift on the date of the accident, he and LeMaire were both supervised by Texaco Lead Operator, Richard Remo Ardoin. Id.; Ardoin & Flice dep. pgs. 24, 67-69.

Texaco employees gave LeMaire and Phillips instructions regarding where to work and what to do. Phillips dep. p. 41; LeMaire dep. p. 73; Ardoin & Flice dep. pgs. 55-56. Both LeMaire and Phillips performed the work of Texaco and the evidence provided this Court establishes the two men consented to the work situation. Solar dep. p. 34; Ardoin & Flice dep. p. 59. Texaco supervisors provided direct orders to and had control over LeMaire and Phillips concerning their work duties. Phillips dep. p. 39; LeMaire dep. p. 73; Ardoin & Flice dep. p. 55. No D&C or

Steen supervisors were sent out to any of the Texaco jobs. Phillips dep. p. 39.

LeMaire and Phillips performed Texaco's work. Ardoin & Flice dep. pgs. 56, 62, 69. Texaco could not terminate LeMaire or Phillips' employment with their nominal employers; however, if Texaco was not satisfied with the work that Phillips or LeMaire was doing, a Texaco supervisor could have either man discharged from his position on the Texaco platform by simply calling the offices of their "nominal" employers and mentioning that their services were no longer needed. Phillips dep. p. 42; LeMaire dep. p. 65; Ardoin & Flice dep. pgs. 59-62.

### Law and Discussion

Pursuant to the OCSLA, 43 U.S.C. § 1331, et seq., the LHWCA, 33 U.S.C. § 901, et seq. is the law applicable to provide an injured offshore worker compensation benefits. As the LHWCA applies, it preempts "the application of the idiosyncrasies of the Louisiana Workers' Compensation scheme." Perron v. Bell Maintenance and Fabricators, Inc., 970 F.2d 1409, 1411 (5th Cir. l992). However, outside of the Workers' Compensation arena, the OCSLA makes the tort law of the adjacent state surrogate federal law and thus applicable to any tort-based cause of action for those offshore injuries. See 43 U.S.C. § 1381, et seq. In other words, were the plaintiff to have a remedy in tort against a non-employer and thus, outside the LHWCA, this Court would apply the

substantive tort law of Louisiana. However, should this plaintiff not have a tort remedy available against defendants D&C and Phillips for the reasons urged by D&C and Phillips, LeMaire would be limited to LHWCA benefits as the LHWCA is the workers' compensation scheme applicable to an offshore worker, such as the plaintiff, who sustains a work related injury on the Outer Continental Shelf.

D&C and Phillips argue LeMaire and Phillips are both borrowed employees of Texaco and thus, LeMaire cannot sue his co-employee. "The question of borrowed-employee status is a question of law for the district court to determine." Billizon v. Conoco, Inc., 993 F.2d 104, 105 (5th Cir.), reh'g denied, 3 F.3d 441 (1993). However, "in some cases, factual disputes must be resolved before the district court can make its legal determination." Id. The Fifth Circuit has set out the following nine (9) factors which must be considered in determining borrowed employee status:

1.   Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?

2.   Whose work was being performed?

3.   Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4.   Did the employee acquiesce in the new work situation?

5.   Did the original employer terminate his relationship with the employee?

6.   Who furnished tools and place for performance?

7.    Was the new employment over a considerable length of time?

8.    Who had the right to discharge the employee?

9.    Who had the obligation to pay the employee?

Id. (citing Brown v. Union Oil Co. of California, 984 F.2d 674, 676 (5th Cir. 1993)).  The Fifth Circuit "has held many times that no single factor is determinative."  Id. at 106.[3]

In addition to considering the above factors, this Court reviews defendant's Motion for Summary Judgment under the standard set out in Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides that summary judgment shall be rendered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Plaintiff must make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial.

---

[3]    However, the court has also stated that the first factor is the "central issue" of borrowed employee status, Melancon v. Amoco Production Co., 834 F.2d 1238, 1245 (5th Cir.) amended, 841 F.2d 572 (1988).  In other cases, the Fifth Circuit has stressed the importance of the fourth, fifth, sixth, and seventh factors of borrowed employee status.  See Id., n. 12.

Fields v. Hallsville Independent School District, 906 F.2d 1017 (5th Cir. 1990) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986)).  In Anderson, the Supreme Court held that the "inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply to trial on the merits."  The judge must decide:

> [W]hether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  The mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

Anderson, 477 U.S. at 252.

**A.   Was Plaintiff the Borrowed Employee of Texaco?**

**1.   Who had control over plaintiff and the work he was performing, beyond mere suggestion of details or cooperation?**

Regardless of the presence or absence of Texaco employees on the Texaco platform 643-B at the actual time of the alleged accident, the evidence provided the Court is undisputed LeMaire was instructed by Texaco's employees.  Of the four or five months of his employment with Steen, LeMaire spent the three months prior to his alleged accident reporting directly to Texaco's platform.  During his work for Texaco, LeMaire filled out a daily log of his work hours in order to be paid for the job he was

performing for Texaco. LeMaire dep. p. 70. The only contact LeMaire had with Steen was to report his hours and receive his paycheck. Accordingly, this Court finds that as to factor one (1), Texaco had control over LeMaire and the work he was performing.

### 2. Whose work was being performed?

Plaintiff controverts defendants' statement that "[b]oth LeMaire and Phillips were doing work only for Texaco while on the Texaco jobs," on the grounds that both LeMaire and Phillips were doing work for their respective employers, Steen and D&C, which involved work for Texaco under contract. However, plaintiff's assertion embodies the nature of the "borrowed employee." The evidence provided this Court establishes no question exists that the work performed by LeMaire and Phillips was Texaco's work. LeMaire dep. p. 73; Ardoin & Flice dep. pgs. 56, 62, 69. Accordingly, this Court finds that LeMaire was performing Texaco's work.

### 3. Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer?

Plaintiff asserts in his Statement of Material Facts, page 3, that the contract between Texaco and Steen provided that Steen was an independent contractor and that its employees were not subject to Texaco's control. However, a contract provision such as the one described above does not bar a borrowed employee's status. Brown, 984 F.2d at 677; Melancon, 834 F.2d at 1245. The

-11-

parties' actions in carrying out the contract can provide an implied modification or waiver of such an express provision.  Id. As defendants assert, no written agreement is even required. Billizon, 993 F.2d at 105-106.

In Billizon, the only disputed issue before the Court was whether the existence of a contract provision "purporting to prohibit borrowed-employee status [made] the district court's summary judgment inappropriate."  993 F.2d at 106.  The Court held that even assuming factor three weighed in favor of the plaintiff's position, the remainder of the summary judgment record established that the plaintiff was Conoco's borrowed employee.  Id.

In that case, the service contract governing the relationship between Conoco and the plaintiff's nominal employer, D&C, provided that the employees of D&C were not the employees of Conoco.  However, the Court stated that it is "the reality of the work site and the [parties'] actions" in carrying out a contract that established for the Court that the two employers had the contrary "'understanding or meeting of the minds'".  Id.

Despite the contrary provisions in the contract between Steen and Texaco, the facts and testimony provided this Court indicate that Texaco controlled the work performed by LeMaire. Donald Solar, a representative of Steen, LeMaire's direct employer, stated in his deposition that, "We had a contract with

Texaco to furnish personnel, but the detail job description that was Texaco."  Solar dep. p. 34.  Solar also testified that Texaco had exclusive day to day supervision over LeMaire when he was on the Texaco job.  Solar dep. p. 36.

In this case, like Billizon, only the third factor could possibly support plaintiff's contention that he was not a borrowed employee of Texaco.  However, the Fifth Circuit has repeatedly stated that "no single factor is determinative." Billizon, 993 F.2d at 106; Brown, 984 F.2d at 676; Melancon, 834 F.2d at 1245.  Therefore, the Court must further examine the remaining factors to determine LeMaire's status as Texaco's borrowed employee.

**4.    Did the employee acquiesce in the new work situation?**

The Court in Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615, 617 (5th Cir.) cert denied, 479 U.S. 838, 107 S.Ct. 141 (1986) states:

> The fourth factor asks whether the employee acquiesced in the new work situation.  Since Capps worked for a company that loaned temporary employees, Capps knew Davis would send him into new work situations.  Thus, going into new work situations was Capps' work situation.  When he went to work for Davis, he acquiesced to the fact that Davis would constantly send him into new work situations.

The facts of this case and the deposition testimony provided the Court establish that LeMaire acquiesced in the work situation. LeMaire worked for three months for Texaco under the conditions previously mentioned which included eating and sleeping on

Texaco's fixed platform. The Fifth Circuit has stated that working for "one month is a sufficient amount of time for [the employee] to appreciate the new work condition." Brown, 984 F.2d at 678.

In Solar's deposition, he stated, as Steen's representative, that LeMaire never protested to Solar regarding LeMaire's work situation with Texaco through Steen. Solar dep. p. 34. Further, Richard Ardoin, LeMaire's and Phillips' supervisor and Texaco's Lead Operator on the date of plaintiff's alleged accident, stated in his deposition that he never heard LeMaire protest doing Texaco's work when LeMaire was sent out to Texaco's platform. Ardoin & Flice dep. p. 59.

Accordingly, the Court finds pursuant to factor four (4) that LeMaire did acquiesce in his working situation as an employee of Steen and the borrowed employee of Texaco.

**5. Did the original employer terminate his relationship with the employee?**

Under this factor, the Fifth Circuit has stated:

We do not believe that this factor requires a lending employer to completely sever his relationship with the employee. Such a requirement would effectively eliminate the borrowed employee doctrine as there could never be two employers. The emphasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs.

Capps, 784 F.2d at 617-618. As previously stated, during his employment with Steen, LeMaire worked under Texaco's supervision and control.

LeMaire stated in his deposition that the only supervision on Texaco's platform was provided by either Texaco employees or higher contract employees who were also working for Texaco. LeMaire dep. p. 73. LeMaire's contact with Steen was limited to reporting his hours to Steen. LeMaire had a copy of his time sheet delivered to Steen so he could receive his paycheck for the work he performed for Texaco. LeMaire dep. p. 70; Ardoin & Flice dep. p. 62; Solar dep. p. 36. Ardoin stated in his deposition that when the contract workers were on Texaco's platform, Texaco had control over those workers. Ardoin & Flice dep. p. 55. Ardoin also stated that even if he, or another Texaco employee, was not actually on the Texaco platform in the presence of the contract employees, Ardoin was still in charge of those employees. Ardoin & Flice dep. p. 32. Robert Flice, a representative of Texaco, stated in his deposition that Texaco could send contract employees, like LeMaire and Phillips, wherever Texaco wanted those employees to work. Ardoin & Flice dep. p. 58.

Accordingly, the Court finds that Steen exercised no control over plaintiff and placed no restrictions on Texaco with respect to plaintiff's employment conditions. Capps, 784 F.2d 618. Therefore, this Court finds that factor five (5) weighs in favor of borrowed employee status.

**6.   Who furnished the tools and place for performance?**

-15-

Plaintiff's deposition establishes that "the tools and equipment and platforms all belonged to Texaco". LeMaire dep. p. 73-4. Steen's representative also establishes in his deposition that Texaco provided the tools with which LeMaire worked while doing Texaco work. Solar dep. p. 35. It is undisputed that Texaco provided the sleeping quarters in which LeMaire slept, the meals that he ate, as well as LeMaire's transportation to and from the job site while LeMaire worked for Texaco.

Accordingly, after reviewing the facts of this case, this Court finds that factor six (6) weighs in favor of a finding of borrowed employee status.

**7.    Was the new employment over a considerable length of time?**

The arrangement between LeMaire, Steen and Texaco existed for approximately three months prior to plaintiff's alleged accident. In Capps, the Fifth Circuit noted that "[w]here the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true." 784 F.2d at 618. In that case, Capps' injury occurred on the first day and the Fifth Circuit concluded that this seventh factor was neutral. Id. In Billizon, the Fifth Circuit found factor seven to be neutral when the plaintiff had worked for Conoco for more than three months. 993 F.2d 106.

Similarly, because plaintiff only worked under Texaco's supervision for three months in the instant case, this Court

-16-

finds that factor seven (7) is neutral.

**8.    Who had the right to discharge plaintiff?**

No evidence was provided this Court indicating that Texaco had the right to terminate LeMaire's employment with Steen. However, in LeMaire's and Solar's depositions, they both testified Texaco had the right to terminate LeMaire's work relationship with Texaco.  LeMaire dep. p. 65; Solar dep. p. 35. The Fifth Circuit has stated that "[t]his arrangement is sufficient to support a finding of borrowed servant status". Brown, 984 F.2d at 679 (citing Melancon, 834 F.2d at 1246; Capps, 784 F.2d at 618).  Accordingly, this Court finds that factor eight (8) weighs in favor of a finding of borrowed employee status.

**9.    Who had the obligation to pay the employee?**

LeMaire's deposition establishes that Steen paid him, however he only reported his hours to Steen based on the time he spent working for Texaco.  LeMaire dep. pgs. 48,70; Ardoin & Flice dep. p. 66.  In Billizon, Capps, and Melancon, the Fifth Circuit found that this procedure supported borrowed employee status.  Therefore, this Court finds that factor nine (9) weighs in favor of borrowed employee status.  Billizon, 993 F.2d 105-106; Melancon, 834 F.2d 1246; Capps, 784 F.2d 618.

Factors 1,2,4,5,6,8 and 9 support LeMaire's borrowed-employee status.  Although this Court finds factor seven is

neutral, the Fifth Circuit, in <u>Billizon</u>, has stated "the neutrality of factor [seven] is insufficient to render the district court's summary judgment inappropriate". 993 F.2d at 106. In that case, as stated above, the Court also found that despite the question that existed regarding the third factor, summary judgment was appropriate when the remaining factors clearly pointed to borrowed-employee status. <u>Id</u>. This Court finds, consistent with the <u>Billizon</u> Court, that even assuming factor three weighs in favor of LeMaire's position, the remaining factors support, and the evidence provided this Court establishes, that LeMaire was Texaco's borrowed employee.

**B. Was Defendant Phillips the Borrowed Employee of Texaco?**

**1. Who had control over Phillips and the work he was performing, beyond mere suggestion of details or cooperation?**

The deposition testimony of Phillips establishes that Texaco employees gave all orders to Phillips. Phillips dep. p. 38-40. Phillips was instructed by Texaco's employees. It is undisputed that the foreman, a Texaco employee, decided where Phillips would work on his seven day shift. Phillips dep. p. 38. Kenneth Domingue, Texaco's lead operator, was Phillips' supervisor. Phillips dep. p. 39.

Like LeMaire, during Phillips' work for Texaco, Phillips filled out a weekly time book of his work hours in order to be paid for the job he was performing for Texaco. Phillips dep.

pgs. 43-44.  The only contact Phillips had with D&C was to report his hours and receive his paycheck.  Accordingly, this Court finds that as to factor one (1), Texaco had control over Phillips and the work he was performing.

### 2.    Whose work was being performed?

Phillips' deposition testimony establishes that Phillips was doing Texaco's work while he was working on Texaco's platform.  Phillips dep. p. 41.  Accordingly, this Court finds that Phillips was performing Texaco's work.

### 3.    Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer?

Again, as to the contract between D&C and Texaco, plaintiff asserts in his Statement of Material Facts, page 3, that the contract between Texaco and D&C provided that D&C was an independent contractor and that its employees were not subject to Texaco's control.  Likewise, this Court adopts the same analysis as was used in reference to LeMaire and the contract between Steen and Texaco.

Despite the contrary provision in the contract between D&C and Texaco, the facts and deposition testimony provided the Court indicate that Texaco controlled the work performed by Phillips.  In this case, like Billizon, only the third factor could possibly support plaintiff's contention that Phillips was not a borrowed employee of Texaco.  However, the Fifth Circuit has repeatedly stated that "no single factor is determinative."  Billizon, 993

-19-

F.2d at 106; <u>Brown</u>, 984 F.2d at 676; <u>Melancon</u>, 834 F.2d at 1245. Therefore, the Court must further examine the remaining factors to determine Phillips' status as Texaco's borrowed employee.

**4.    Did the employee acquiesce in the new work situation?**

The facts of this case dictate that Phillips acquiesced to the work situation. Phillips worked for one year for Texaco prior to the alleged accident. Phillips continued to work for Texaco for a year and a half after the accident under the conditions previously mentioned which included eating and sleeping in Texaco's field. Accordingly, the Court finds pursuant to factor four (4) that Phillips did acquiesce to his working situation as an employee of D&C and the borrowed employee of Texaco.

**5.    Did the original employer terminate his relationship with the employee?**

As previously stated, during his two and a half years of employment with D&C, Phillips worked under Texaco's supervision and control. Phillips' contact with D&C was limited to reporting his hours so he could receive his paycheck. Phillips dep. pgs. 43-44; Ardoin & Flice dep. p. 66. Accordingly, the Court finds that D&C exercised no control over Phillips and placed no restrictions on Texaco with respect to Phillips' employment conditions. <u>Capps</u>, 784 F.2d 618. Therefore, this Court finds that factor five (5) weighs in favor of borrowed employee status.

**6.    Who furnished the tools and place for performance?**

-20-

Phillips' deposition establishes that Texaco furnished the tools he used to perform his work for Texaco. Phillips dep. p. 43. It is undisputed that Texaco provided the sleeping quarters in which Phillips slept, the meals that he ate, as well as Phillips' transportation to and from the job site while Phillips worked for Texaco. Further, all of Phillips' regular duties were handled on the Texaco platforms where he was the lead operator. LeMaire dep. pgs. 66-7. Accordingly, after reviewing the facts of this case, this Court finds that factor six (6) weighs in favor of a finding of borrowed employee status.

**7.  Was the new employment over a considerable length of time?**

The arrangement between Phillips, D&C and Texaco existed for approximately a year prior to plaintiff's alleged accident and Phillips continued to work as a Texaco "contract hand" for almost a year and a half thereafter. Phillips dep. pgs. 41-2. Considering the facts and the duration of Phillips' employment with Texaco through D&C, this Court finds that factor seven (7) weighs in favor of a finding of borrowed employee status.

**8.  Who had the right to discharge Phillips?**

In Phillips' deposition, he testified that after almost two and a half years of work for Texaco through D&C, the field foreman, a Texaco employee, called D&C and told them that Texaco no longer needed Phillips. Phillips' deposition establishes that Texaco discharged Phillips from the Texaco work. Phillips was

aware that Texaco could discharge him. Phillips dep. p. 42. Accordingly, this Court determines that Texaco, and not D&C, had the right to discharge Phillips from his work for Texaco. Therefore, this Court finds that factor eight (8) weighs in favor of a finding of borrowed employee status.

**9.    Who had the obligation to pay the employee?**

Phillips' deposition establishes that D&C paid him, however he only reported his hours to D&C based on the time he spent working for Texaco. Phillips dep. p. 43. In <u>Billizon</u>, <u>Capps</u>, and <u>Melancon</u>, the Fifth Circuit found that this procedure supported borrowed employee status. Therefore, this Court finds that factor nine (9) weighs in favor of borrowed employee status. <u>Billizon</u>, 993 F.2d 105-106; <u>Melancon</u>, 834 F.2d 1246; <u>Capps</u>, 784 F.2d 618.

All factors, except factor three, support the borrowed-employee status of Phillips. Once again, this Court relies on the Fifth Circuit's statement in <u>Billizon</u> that despite the question that existed regarding the third factor, summary judgment was appropriate when the remaining factors clearly pointed to borrowed-employee status. 993 F.2d at 106. Therefore, even assuming factor three weighs in favor of LeMaire's position, the remaining factors support, and the evidence provided this Court establishes, that Phillips was Texaco's borrowed employee.

This Court now has two issues remaining to determine: 1) whether LeMaire and Phillips, each found by this Court, individually, to be borrowed employees of Texaco, were persons "in the same employ" as defined by the LHWCA at the time of LeMaire's alleged accident, and therefore, immune from tort suit against one another; and 2) if LeMaire and Phillips were co-employees of Texaco, then whether LeMaire's respondeat superior action against Phillips' nominal employer, D&C, is also barred under the LHWCA, §933(i). The Fifth Circuit addressed both of these issues in Perron v. Bell Maintenance and Fabricators, Inc., 970 F.2d 1409 (5th Cir. 1992). Therefore, this Court will examine LeMaire's actions against D&C and Phillips in light of the Fifth Circuit's findings in Perron.

### C. Perron v. Bell Maintenance and Fabricators, Inc., 970 F.2d 1409 (5th Cir. 1992).

The primary issue before the Fifth Circuit in Perron was whether the bar under the LHWCA, §933(i), for suits against a co-employee likewise applied to the respondeat superior action before that court filed by the plaintiff against his co-employee's employer. 970 F.2d at 1410. The Fifth Circuit affirmed the district court's granting of summary judgment in favor of the employer. Id.

In Perron, the Court examined a fact scenario similar to that before this Court. In that case, the plaintiff worked for D&C nominally and was injured while working on a Gulf Oil

-23-

production platform when he slipped and fell because of oil left on the platform by Michael Lee, a direct employee of Bell Maintenance.  The plaintiff filed suit against Gulf Oil ("Gulf") and Bell Maintenance ("Bell").  Gulf was dismissed on summary judgment based on the district court's determination and the Fifth Circuit's affirmation of the plaintiff's status as Gulf's borrowed employee.

Bell Maintenance subsequently filed a motion for summary judgment.  The Fifth Circuit affirmed the district court's dismissal of Bell and stated that "[i]n sum, Perron and Lee were co-workers in every meaningful sense of the term.  And because they were borrowed servants/co-employees of the same employer (Gulf), *a fortiori*, they were 'persons in the same employ' under §933(i)."  Id. at 1412.

In Perron, the plaintiff contended that §933(i) immunized only the employer of the injured employee.  Id. at 1411.  The Fifth Circuit corrected this assumption and stated that, "Section 933(i) does not protect employers; it protects negligent co-employees."  Id. at 1412.  The Court then clarified the borrowed employment issue now before this Court.  The Court stated:

> A borrowed servant becomes the employee of the borrowing employer, and "is to be dealt with as the servant of the [borrowing employer] and not of the [nominal employer]." In Ruiz v. Shell Oil Co., our court adopted the borrowed servant rule for the LHWCA.  And borrowed servant status is a question of law.

Id. at 1412 (citations omitted).  This Court has already

determined that both LeMaire and Phillips were the borrowed employees of Texaco. Following the reasoning of the Fifth Circuit in Perron and based on the findings of this Court, LeMaire and Phillips were "persons in the same employ" under §933(i). Therefore, this Court finds they were co-employees of Texaco at the time of plaintiff's alleged accident. As LeMaire and Phillips were co-employees it follows, under Perron, that Phillips should be dealt with as the servant of Texaco, and not of D&C. Id.

After determining the employment status of the plaintiff and Lee in relation to each other and the borrowing employer, Gulf Oil, the Fifth Circuit then explained the next step in the analysis. The Court stated the issue as follows:

> Given that [the plaintiff] is barred by §933(i) from bringing an action against Lee, at issue is whether [the plaintiff] can bring this respondeat superior action against Bell, Lee's nominal employer. Consistent with the LHWCA's comprehensive scheme, [the plaintiff] is barred from doing so.

Id. Adhering to the Court's reasoning in Perron, this Court must next address the issue of whether LeMaire can bring a respondeat superior action against D&C, Phillips' nominal employer. The Fifth Circuit has stated that bringing such an action against a co-employee's nominal employer would not be consistent with the LHWCA's comprehensive scheme. Id. Thus, the Fifth Circuit states, the plaintiff is barred from bringing this respondeat superior action. Id. Accordingly, this Court finds that to

-25-

allow LeMaire to bring a respondeat superior action against D&C, Phillips' nominal employer, would not be consistent with the LHWCA's comprehensive scheme. Therefore, plaintiff is barred from bringing this respondeat superior action against D&C.

Finally, in Perron, the plaintiff contended Louisiana tort law governed his suit against Lee's nominal employer, defendant Bell, under the OCSLA. The Fifth Circuit addressed the plaintiff's OCSLA argument and held that "[s]ection 933(i) provides that LHWCA payments 'shall be the exclusive remedy to an employee when he is injured ... by the negligence or wrong of any other person or person in the same employ.' State law is therefore, preempted by §933(i) in this instance." Id. at 1413-14.

In the case *sub judice*, plaintiff contends that the OCSLA requires state law regarding third party negligence, immunity and damages to apply to plaintiff's action against D&C. However, this Court finds that Perron dictates otherwise. The Court in Perron found Louisiana law regarding third party negligence and immunity to be inconsistent with §933(i) as it applied to the plaintiff's action against his co-employee's nominal employer. Id. Therefore, this Court finds Louisiana law regarding third party negligence and immunity to be preempted here as well.

Defendants assert, and this Court agrees, that the facts before this Court are "on all fours" with Perron. Thus, §933(i)

-26-

applies and precludes the application of any Louisiana tort law principles to plaintiff's action against Phillips and plaintiff's respondeat superior action against Phillips' nominal employer, D&C.

## Conclusion

Based on the facts provided this Court regarding the borrowed servant status of LeMaire and Phillips and pursuant to the application of the nine <u>Ruiz</u> factors as discussed above, this Court finds that both LeMaire and Phillips were borrowed servants of Texaco. As both LeMaire and Phillips were borrowed employees of Texaco, under §933(i) and <u>Perron</u>, it necessarily follows that LeMaire and Phillips were "persons in the same employ," and therefore, co-employees.

Considering that both LeMaire and Phillips are co-employees/ borrowed servants of Texaco, Phillips and D&C, Phillips' nominal employer, should be dismissed as a matter of law. Under the LHWCA, LeMaire is barred from bringing any action against Phillips as he is LeMaire's co-employee. D&C, as Phillips' nominal employer, is not vicariously liable to LeMaire for the alleged negligence of Phillips. Rather, Phillips is to be dealt with as the servant of Texaco. This Court must apply the LHWCA consistently. Accordingly, the Court finds that §933(i) precludes the application of the inconsistent Louisiana tort law principles under which LeMaire seeks recovery.

Thus, this Court has determined that factors 1, 2, 4, 5, 6, 8 and 9 favor a finding of borrowed employee status as to LeMaire and that all factors, except 3, favor a finding of borrowed employee status as to Phillips. In accordance with the Fifth Circuit's ruling in <u>Billizon</u>, this Court finds that despite the uncertainty of the facts relating to factor three, the remaining factors support, and the evidence provided this Court establishes, that LeMaire and Phillips were borrowed employees of Texaco. Under §933(i) and <u>Perron</u>, this Court also finds that LeMaire and Phillips were co-employees in the same employ within the meaning of §933(i) of the LHWCA. As a co-employee, LeMaire cannot maintain a tort action against Phillips. As D&C is Phillips' nominal employer and, under <u>Perron</u>, is not vicariously liable for Phillips' alleged negligence, LeMaire cannot maintain a tort action against D&C. Accordingly, this Court GRANTS the Motion for Summary Judgment [doc. #37] filed on behalf of defendants, Danos & Curole Marine Contractors, Inc. and Charles Phillips dismissing the complaint of Shawn LeMaire against D&C and Phillips.

THUS DONE AND SIGNED this _____ day of _____, 1999.


_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-28-

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

SHAWN LEMAIRE, ET AL                    CIVIL ACTION NUMBER: 98-0051

VERSUS                                  JUDGE DOHERTY

DANOS & CUROLE MARINE                    MAGISTRATE JUDGE METHVIN
CONTRACTORS, INC., ET AL

O R D E R

Considering the foregoing Memorandum Ruling;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment [doc. #37] filed on behalf of defendants, Danos & Curole Marine Contractors, Inc. and Charles Phillips dismissing plaintiff Shawn LeMaire's complaints against Danos & Curole Marine Contractors, Inc. and Charles Phillips is hereby GRANTED.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

SHAWN LEMAIRE, ET AL          CIVIL ACTION NUMBER: 98-0051

VERSUS                       JUDGE DOHERTY

DANOS & CUROLE MARINE        MAGISTRATE JUDGE METHVIN

<u>MEMORANDUM RULING</u>

Before this Court is a Motion for Summary Judgment [doc. #37] filed on behalf of defendants, Danos & Curole Marine Contractors, Inc. ("D&C") and Charles Phillips ("Phillips"). Defendants' Motion for Summary Judgment is based upon their contention there is no genuine issue of material fact as to whether Shawn LeMaire ("LeMaire") and Phillips are the borrowed employees of Texaco, Inc. ("Texaco") and therefore, co-employees as defined by the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. ("LHWCA").

In summary, defendants, D&C and Phillips, assert that, as a matter of law, LeMaire and Phillips are the borrowed employees of Texaco and that LeMaire is barred from any recovery against his co-employee, Phillips. Defendants further assert plaintiff's claims against defendants, D&C and Phillips, pursuant to the Outer Continental Lands Shelf Act, 43 U.S.C. § 1331, et seq. ("OCLSA") and the LHWCA should be dismissed on the basis that LeMaire and Phillips are borrowed employees of Texaco and thus, co-employees under the LHWCA. Pursuant to the LHWCA, Phillips

and Phillips' nominal employer, D&C, would be immune from tort liability as any negligence on Phillips' part would be imputed to Texaco as Phillips' borrowing employer, and not to D&C, Phillips' nominal employer.

In opposing this motion, plaintiff asserts those sections of the LHWCA granting immunity from tort liability to co-employees should not apply. Rather, the OCSLA, 43 U.S.C. § 1333, requires that state law be applied regarding third party negligence or immunity and damages. Plaintiff also asserts there are genuine issues of material fact as to whether LeMaire and Phillips were "borrowed employees" of Texaco. Plaintiff further asserts genuine issues of material fact exist as to whether LeMaire was a "co-employee" of D&C's employee, Phillips, within the meaning of the LHWCA, 33 U.S.C. § 901, et seq.

To rule on defendants' motion, the Court must determine whether LeMaire and/or Phillips were the borrowed employees of Texaco as a matter of law, and thus, co-employees of Texaco as defined by the LHWCA.

### Background

On or about December 14, 1996, Shawn LeMaire, plaintiff, was employed by Steen Production Services, Inc. ("Steen") as a C Operator. Plaintiff was working at a job site owned by Texaco, Inc. ("Texaco") in the Gulf of Mexico on a fixed platform located at West Cameron Block 643-B. LeMaire dep. pgs. 37, 74. It is undisputed that the platform is located more than three miles off

the coast of Louisiana on the outer continental shelf.

Prior to his alleged accident, LeMaire had worked continuously in the Texaco 643 field for approximately three months. LeMaire dep. p. 37. On the day plaintiff was allegedly injured, LeMaire was assisting defendant Charles Phillips ("Phillips"). Phillips was an employee of defendant, Danos & Curole Marine Contractors, Inc. ("D&C"). Phillips usually worked the opposite shift of LeMaire. However, on this particular shift, Phillips stayed on the platform for additional days because another person was off. LeMaire depo. p. 94; Ardoin & Flice depo., pps. 28-30. Prior to LeMaire's alleged accident, Phillips had worked continuously in the Texaco 643 field for one year. Phillips dep. pgs. 10, 41; Solar, a representative of Steen, dep. p. 35.

On the day of the alleged accident, Phillips was removing the last bolt from a Series 357 Control Valve when he became tired. Plaintiff began to help Phillips remove the bolt when the valve blew off and struck plaintiff in the head and knocked him backwards on to the grating causing him to injure his head, neck and back. Plaintiff asserts that as a direct result of this accident, he sustained injuries including a skull fracture, two lacerations requiring stitches, a severed nerve, severe headaches, dizziness and nervous problems.

It is undisputed that at the time of LeMaire's alleged accident, both D&C and Steen were under contract with Texaco to

provide employees to operate Texaco platforms offshore and work as directed by Texaco employees. LeMaire dep. p. 37; Solar dep. p. 12. While on the Texaco project, LeMaire and Phillips normally worked schedules of seven days on and seven days off. Phillips dep. p. 37; LeMaire dep. p. 38. Texaco provided their sleeping quarters, their meals and their transportation to and from the job. Phillips dep. p. 36; LeMaire dep. pgs. 44-45, 55-56, 64. Phillips' immediate supervisor was Texaco Lead Operator, Kenneth Domingue. Phillips dep. pgs. 39-40. However, because Phillips had agreed to work over his seven day shift on the date of the accident, he and LeMaire were both supervised by Texaco Lead Operator, Richard Remo Ardoin. Id.; Ardoin & Flice dep. pgs. 24, 67-69.

Texaco employees gave LeMaire and Phillips instructions regarding where to work and what to do. Phillips dep. p. 41; LeMaire dep. p. 73; Ardoin & Flice dep. pgs. 55-56. Both LeMaire and Phillips performed the work of Texaco and the evidence provided this Court establishes the two men consented to the work situation. Solar dep. p. 34; Ardoin & Flice dep. p. 59. Texaco supervisors provided direct orders to and had control over LeMaire and Phillips concerning their work duties. Phillips dep. p. 39; LeMaire dep. p. 73; Ardoin & Flice dep. p. 55. No D&C or Steen supervisors were sent out to any of the Texaco jobs. Phillips dep. p. 39.

LeMaire and Phillips performed Texaco's work. Ardoin &

Flice dep. pgs. 56, 62, 69.  Texaco could not terminate LeMaire or Phillips' employment with their nominal employers; however, if Texaco was not satisfied with the work that Phillips or LeMaire was doing, a Texaco supervisor could have either man discharged from his position on the Texaco platform by simply calling the offices of their "nominal" employers and mentioning that their services were no longer needed.  Phillips dep. p. 42; LeMaire dep. p. 65; Ardoin & Flice dep. pgs. 59-62.

## Law and Discussion

Pursuant to the OCSLA, 43 U.S.C. § 1331, et seq., the LHWCA, 33 U.S.C. § 901, et seq. is the law applicable to provide an injured offshore worker compensation benefits.  As the LHWCA applies, it preempts "the application of the idiosyncrasies of the Louisiana Workers' Compensation scheme."  Perron v. Bell Maintenance and Fabricators, Inc., 970 F.2d 1409, 1411 (5th Cir. 1992).  However, outside of the Workers' Compensation arena, the OCSLA makes the tort law of the adjacent state surrogate federal law and thus applicable to any tort-based cause of action for those offshore injuries.  See 43 U.S.C. § 1381, et seq.  In other words, were the plaintiff to have a remedy in tort against a non-employer and thus, outside the LHWCA, this Court would apply the substantive tort law of Louisiana.  However, should this plaintiff not have a tort remedy available against defendants D&C and Phillips for the reasons urged by D&C and Phillips, LeMaire would be limited to LHWCA benefits as the LHWCA is the workers'

-35-

compensation scheme applicable to an offshore worker, such as the plaintiff, who sustains a work related injury on the Outer Continental Shelf.

D&C and Phillips argue LeMaire and Phillips are both borrowed employees of Texaco and thus, LeMaire cannot sue his co-employee. "The question of borrowed-employee status is a question of law for the district court to determine." Billizon v. Conoco, Inc., 993 F.2d 104, 105 (5th Cir.), reh'g denied, 3 F.3d 441 (1993). However, "in some cases, factual disputes must be resolved before the district court can make its legal determination." Id. The Fifth Circuit has set out the following nine (9) factors which must be considered in determining borrowed employee status:

1.    Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?

2.    Whose work was being performed?

3.    Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4.    Did the employee acquiesce in the new work situation?

5.    Did the original employer terminate his relationship with the employee?

6.    Who furnished tools and place for performance?

7.    Was the new employment over a considerable length of time?

8.    Who had the right to discharge the employee?

9.    Who had the obligation to pay the employee?

Id. (citing Brown v. Union Oil Co. of California, 984 F.2d 674,

676 (5th Cir. 1993)).  The Fifth Circuit "has held many times that no single factor is determinative."  Id. at 106.[4]

In addition to considering the above factors, this Court reviews defendant's Motion for Summary Judgment under the standard set out in Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides that summary judgment shall be rendered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Plaintiff must make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial. Fields v. Hallsville Independent School District, 906 F.2d 1017 (5th Cir. 1990) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986)).  In Anderson, the Supreme Court held that the "inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard

---

[4]    However, the court has also stated that the first factor is the "central issue" of borrowed employee status, Melancon v. Amoco Production Co., 834 F.2d 1238, 1245 (5th Cir.) amended, 841 F.2d 572 (1988).  In other cases, the Fifth Circuit has stressed the importance of the fourth, fifth, sixth, and seventh factors of borrowed employee status.  See Id., n. 12.

of proof that would apply to trial on the merits."  The judge

must decide:

> [W]hether a fair-minded jury could return a verdict for
> the plaintiff on the evidence presented.  The mere
> existence of a scintilla of evidence in support of a
> plaintiff's position will be insufficient; there must
> be evidence on which the jury could reasonably find for
> the plaintiff.  The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors could find
> by a preponderance of the evidence that the plaintiff
> is entitled to a verdict....

Anderson, 477 U.S. at 252.

### A.    Was Plaintiff the Borrowed Employee of Texaco?

### 1.    Who had control over plaintiff and the work he was performing, beyond mere suggestion of details or cooperation?

Regardless of the presence or absence of Texaco employees on the Texaco platform 643-B at the actual time of the alleged accident, the evidence provided the Court is undisputed LeMaire was instructed by Texaco's employees.  Of the four or five months of his employment with Steen, LeMaire spent the three months prior to his alleged accident reporting directly to Texaco's platform.  During his work for Texaco, LeMaire filled out a daily log of his work hours in order to be paid for the job he was performing for Texaco.  LeMaire dep. p. 70.  The only contact LeMaire had with Steen was to report his hours and receive his paycheck.  Accordingly, this Court finds that as to factor one (1), Texaco had control over LeMaire and the work he was performing.

### 2.    Whose work was being performed?

Plaintiff controverts defendants' statement that "[b]oth LeMaire and Phillips were doing work only for Texaco while on the Texaco jobs," on the grounds that both LeMaire and Phillips were doing work for their respective employers, Steen and D&C, which involved work for Texaco under contract. However, plaintiff's assertion embodies the nature of the "borrowed employee." The evidence provided this Court establishes no question exists that the work performed by LeMaire and Phillips was Texaco's work. LeMaire dep. p. 73; Ardoin & Flice dep. pgs. 56, 62, 69. Accordingly, this Court finds that LeMaire was performing Texaco's work.

**3.    Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer?**

Plaintiff asserts in his Statement of Material Facts, page 3, that the contract between Texaco and Steen provided that Steen was an independent contractor and that its employees were not subject to Texaco's control. However, a contract provision such as the one described above does not bar a borrowed employee's status. <u>Brown</u>, 984 F.2d at 677; <u>Melancon</u>, 834 F.2d at 1245. The parties' actions in carrying out the contract can provide an implied modification or waiver of such an express provision. <u>Id.</u> As defendants assert, no written agreement is even required. <u>Billizon</u>, 993 F.2d at 105-106.

In <u>Billizon</u>, the only disputed issue before the Court was whether the existence of a contract provision "purporting to

prohibit borrowed-employee status [made] the district court's summary judgment inappropriate." 993 F.2d at 106. The Court held that even assuming factor three weighed in favor of the plaintiff's position, the remainder of the summary judgment record established that the plaintiff was Conoco's borrowed employee. Id.

In that case, the service contract governing the relationship between Conoco and the plaintiff's nominal employer, D&C, provided that the employees of D&C were not the employees of Conoco. However, the Court stated that it is "the reality of the work site and the [parties'] actions" in carrying out a contract that established for the Court that the two employers had the contrary "'understanding or meeting of the minds'". Id.

Despite the contrary provisions in the contract between Steen and Texaco, the facts and testimony provided this Court indicate that Texaco controlled the work performed by LeMaire. Donald Solar, a representative of Steen, LeMaire's direct employer, stated in his deposition that, "We had a contract with Texaco to furnish personnel, but the detail job description that was Texaco." Solar dep. p. 34. Solar also testified that Texaco had exclusive day to day supervision over LeMaire when he was on the Texaco job. Solar dep. p. 36.

In this case, like Billizon, only the third factor could possibly support plaintiff's contention that he was not a borrowed employee of Texaco. However, the Fifth Circuit has

repeatedly stated that "no single factor is determinative." Billizon, 993 F.2d at 106; Brown, 984 F.2d at 676; Melancon, 834 F.2d at 1245. Therefore, the Court must further examine the remaining factors to determine LeMaire's status as Texaco's borrowed employee.

**4.   Did the employee acquiesce in the new work situation?**

The Court in Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615, 617 (5th Cir.) cert denied, 479 U.S. 838, 107 S.Ct. 141 (1986) states:

> The fourth factor asks whether the employee acquiesced in the new work situation. Since Capps worked for a company that loaned temporary employees, Capps knew Davis would send him into new work situations. Thus, going into new work situations was Capps' work situation. When he went to work for Davis, he acquiesced to the fact that Davis would constantly send him into new work situations.

The facts of this case and the deposition testimony provided the Court establish that LeMaire acquiesced in the work situation. LeMaire worked for three months for Texaco under the conditions previously mentioned which included eating and sleeping on Texaco's fixed platform. The Fifth Circuit has stated that working for "one month is a sufficient amount of time for [the employee] to appreciate the new work condition." Brown, 984 F.2d at 678.

In Solar's deposition, he stated, as Steen's representative, that LeMaire never protested to Solar regarding LeMaire's work situation with Texaco through Steen. Solar dep. p. 34. Further, Richard Ardoin, LeMaire's and Phillips' supervisor and Texaco's

-41-

Lead Operator on the date of plaintiff's alleged accident, stated in his deposition that he never heard LeMaire protest doing Texaco's work when LeMaire was sent out to Texaco's platform. Ardoin & Flice dep. p. 59.

Accordingly, the Court finds pursuant to factor four (4) that LeMaire did acquiesce in his working situation as an employee of Steen and the borrowed employee of Texaco.

### 5. Did the original employer terminate his relationship with the employee?

Under this factor, the Fifth Circuit has stated:

We do not believe that this factor requires a lending employer to completely sever his relationship with the employee. Such a requirement would effectively eliminate the borrowed employee doctrine as there could never be two employers. The emphasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs.

Capps, 784 F.2d at 617-618. As previously stated, during his employment with Steen, LeMaire worked under Texaco's supervision and control.

LeMaire stated in his deposition that the only supervision on Texaco's platform was provided by either Texaco employees or higher contract employees who were also working for Texaco. LeMaire dep. p. 73. LeMaire's contact with Steen was limited to reporting his hours to Steen. LeMaire had a copy of his time sheet delivered to Steen so he could receive his paycheck for the work he performed for Texaco. LeMaire dep. p. 70; Ardoin & Flice dep. p. 62; Solar dep. p. 36. Ardoin stated in his deposition

that when the contract workers were on Texaco's platform, Texaco had control over those workers.  Ardoin & Flice dep. p. 55. Ardoin also stated that even if he, or another Texaco employee, was not actually on the Texaco platform in the presence of the contract employees, Ardoin was still in charge of those employees.  Ardoin & Flice dep. p. 32.  Robert Flice, a representative of Texaco, stated in his deposition that Texaco could send contract employees, like LeMaire and Phillips, wherever Texaco wanted those employees to work.  Ardoin & Flice dep. p. 58.

Accordingly, the Court finds that Steen exercised no control over plaintiff and placed no restrictions on Texaco with respect to plaintiff's employment conditions.  Capps, 784 F.2d 618. Therefore, this Court finds that factor five (5) weighs in favor of borrowed employee status.

**6.  Who furnished the tools and place for performance?**

Plaintiff's deposition establishes that "the tools and equipment and platforms all belonged to Texaco".  LeMaire dep. p. 73-4.  Steen's representative also establishes in his deposition that Texaco provided the tools with which LeMaire worked while doing Texaco work.  Solar dep. p. 35.  It is undisputed that Texaco provided the sleeping quarters in which LeMaire slept, the meals that he ate, as well as LeMaire's transportation to and from the job site while LeMaire worked for Texaco.

Accordingly, after reviewing the facts of this case, this

Court finds that factor six (6) weighs in favor of a finding of borrowed employee status.

**7.   Was the new employment over a considerable length of time?**

The arrangement between LeMaire, Steen and Texaco existed for approximately three months prior to plaintiff's alleged accident.  In <u>Capps</u>, the Fifth Circuit noted that "[w]here the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true."  784 F.2d at 618.  In that case, Capps' injury occurred on the first day and the Fifth Circuit concluded that this seventh factor was neutral.  <u>Id</u>.  In <u>Billizon</u>, the Fifth Circuit found factor seven to be neutral when the plaintiff had worked for Conoco for more than three months.  993 F.2d 106.

Similarly, because plaintiff only worked under Texaco's supervision for three months in the instant case, this Court finds that factor seven (7) is neutral.

**8.   Who had the right to discharge plaintiff?**

No evidence was provided this Court indicating that Texaco had the right to terminate LeMaire's employment with Steen. However, in LeMaire's and Solar's depositions, they both testified Texaco had the right to terminate LeMaire's work relationship with Texaco.  LeMaire dep. p. 65; Solar dep. p. 35. The Fifth Circuit has stated that "[t]his arrangement is sufficient to support a finding of borrowed servant status".

Brown, 984 F.2d at 679 (citing Melancon, 834 F.2d at 1246; Capps, 784 F.2d at 618).  Accordingly, this Court finds that factor eight (8) weighs in favor of a finding of borrowed employee status.

**9.  Who had the obligation to pay the employee?**

LeMaire's deposition establishes that Steen paid him, however he only reported his hours to Steen based on the time he spent working for Texaco.  LeMaire dep. pgs. 48,70; Ardoin & Flice dep. p. 66.  In Billizon, Capps, and Melancon, the Fifth Circuit found that this procedure supported borrowed employee status.  Therefore, this Court finds that factor nine (9) weighs in favor of borrowed employee status.  Billizon, 993 F.2d 105-106; Melancon, 834 F.2d 1246; Capps, 784 F.2d 618.

Factors 1,2,4,5,6,8 and 9 support LeMaire's borrowed-employee status.  Although this Court finds factor seven is neutral, the Fifth Circuit, in Billizon, has stated "the neutrality of factor [seven] is insufficient to render the district court's summary judgment inappropriate".  993 F.2d at 106.  In that case, as stated above, the Court also found that despite the question that existed regarding the third factor, summary judgment was appropriate when the remaining factors clearly pointed to borrowed-employee status.  Id.  This Court finds, consistent with the Billizon Court, that even assuming factor three weighs in favor of LeMaire's position, the remaining factors support, and the evidence provided this Court

-45-

establishes, that LeMaire was Texaco's borrowed employee.

**B.      Was Defendant Phillips the Borrowed Employee of Texaco?**

**1.      Who had control over Phillips and the work he was performing, beyond mere suggestion of details or cooperation?**

The deposition testimony of Phillips establishes that Texaco employees gave all orders to Phillips. Phillips dep. p. 38-40. Phillips was instructed by Texaco's employees. It is undisputed that the foreman, a Texaco employee, decided where Phillips would work on his seven day shift. Phillips dep. p. 38. Kenneth Domingue, Texaco's lead operator, was Phillips' supervisor. Phillips dep. p. 39.

Like LeMaire, during Phillips' work for Texaco, Phillips filled out a weekly time book of his work hours in order to be paid for the job he was performing for Texaco. Phillips dep. pgs. 43-44. The only contact Phillips had with D&C was to report his hours and receive his paycheck. Accordingly, this Court finds that as to factor one (1), Texaco had control over Phillips and the work he was performing.

**2.      Whose work was being performed?**

Phillips' deposition testimony establishes that Phillips was doing Texaco's work while he was working on Texaco's platform. Phillips dep. p. 41. Accordingly, this Court finds that Phillips was performing Texaco's work.

**3.      Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer?**

-46-

Again, as to the contract between D&C and Texaco, plaintiff asserts in his Statement of Material Facts, page 3, that the contract between Texaco and D&C provided that D&C was an independent contractor and that its employees were not subject to Texaco's control. Likewise, this Court adopts the same analysis as was used in reference to LeMaire and the contract between Steen and Texaco.

Despite the contrary provision in the contract between D&C and Texaco, the facts and deposition testimony provided the Court indicate that Texaco controlled the work performed by Phillips. In this case, like Billizon, only the third factor could possibly support plaintiff's contention that Phillips was not a borrowed employee of Texaco. However, the Fifth Circuit has repeatedly stated that "no single factor is determinative." Billizon, 993 F.2d at 106; Brown, 984 F.2d at 676; Melancon, 834 F.2d at 1245. Therefore, the Court must further examine the remaining factors to determine Phillips' status as Texaco's borrowed employee.

**4. Did the employee acquiesce in the new work situation?**

The facts of this case dictate that Phillips acquiesced to the work situation. Phillips worked for one year for Texaco prior to the alleged accident. Phillips continued to work for Texaco for a year and a half after the accident under the conditions previously mentioned which included eating and sleeping in Texaco's field. Accordingly, the Court finds pursuant to factor four (4) that Phillips did acquiesce to his

-47-

working situation as an employee of D&C and the borrowed employee of Texaco.

**5.   Did the original employer terminate his relationship with the employee?**

As previously stated, during his two and a half years of employment with D&C, Phillips worked under Texaco's supervision and control.  Phillips' contact with D&C was limited to reporting his hours so he could receive his paycheck.  Phillips dep. pgs. 43-44; Ardoin & Flice dep. p. 66.  Accordingly, the Court finds that D&C exercised no control over Phillips and placed no restrictions on Texaco with respect to Phillips' employment conditions.  Capps, 784 F.2d 618.  Therefore, this Court finds that factor five (5) weighs in favor of borrowed employee status.

**6.   Who furnished the tools and place for performance?**

Phillips' deposition establishes that Texaco furnished the tools he used to perform his work for Texaco.  Phillips dep. p. 43.  It is undisputed that Texaco provided the sleeping quarters in which Phillips slept, the meals that he ate, as well as Phillips' transportation to and from the job site while Phillips worked for Texaco.  Further, all of Phillips' regular duties were handled on the Texaco platforms where he was the lead operator. LeMaire dep. pgs. 66-7.  Accordingly, after reviewing the facts of this case, this Court finds that factor six (6) weighs in favor of a finding of borrowed employee status.

**7.   Was the new employment over a considerable length of time?**

The arrangement between Phillips, D&C and Texaco existed for approximately a year prior to plaintiff's alleged accident and Phillips continued to work as a Texaco "contract hand" for almost a year and a half thereafter. Phillips dep. pgs. 41-2. Considering the facts and the duration of Phillips' employment with Texaco through D&C, this Court finds that factor seven (7) weighs in favor of a finding of borrowed employee status.

### 8. Who had the right to discharge Phillips?

In Phillips' deposition, he testified that after almost two and a half years of work for Texaco through D&C, the field foreman, a Texaco employee, called D&C and told them that Texaco no longer needed Phillips. Phillips' deposition establishes that Texaco discharged Phillips from the Texaco work. Phillips was aware that Texaco could discharge him. Phillips dep. p. 42. Accordingly, this Court determines that Texaco, and not D&C, had the right to discharge Phillips from his work for Texaco. Therefore, this Court finds that factor eight (8) weighs in favor of a finding of borrowed employee status.

### 9. Who had the obligation to pay the employee?

Phillips' deposition establishes that D&C paid him, however he only reported his hours to D&C based on the time he spent working for Texaco. Phillips dep. p. 43. In Billizon, Capps, and Melancon, the Fifth Circuit found that this procedure supported borrowed employee status. Therefore, this Court finds that factor nine (9) weighs in favor of borrowed employee status.

<u>Billizon</u>, 993 F.2d 105-106; <u>Melancon</u>, 834 F.2d 1246; <u>Capps</u>, 784 F.2d 618.

All factors, except factor three, support the borrowed-employee status of Phillips.  Once again, this Court relies on the Fifth Circuit's statement in <u>Billizon</u> that despite the question that existed regarding the third factor, summary judgment was appropriate when the remaining factors clearly pointed to borrowed-employee status.  993 F.2d at 106. Therefore, even assuming factor three weighs in favor of LeMaire's position, the remaining factors support, and the evidence provided this Court establishes, that Phillips was Texaco's borrowed employee.

This Court now has two issues remaining to determine:  1) whether LeMaire and Phillips, each found by this Court, individually, to be borrowed employees of Texaco, were persons "in the same employ" as defined by the LHWCA at the time of LeMaire's alleged accident, and therefore, immune from tort suit against one another; and 2) if LeMaire and Phillips were co-employees of Texaco, then whether LeMaire's respondeat superior action against Phillips' nominal employer, D&C, is also barred under the LHWCA, §933(i).  The Fifth Circuit addressed both of these issues in <u>Perron v. Bell Maintenance and Fabricators, Inc.</u>, 970 F.2d 1409 (5th Cir. 1992).  Therefore, this Court will examine LeMaire's actions against D&C and Phillips in light of the Fifth Circuit's findings in <u>Perron</u>.

**C.** **Perron v. Bell Maintenance and Fabricators, Inc.,**
**970 F.2d 1409 (5th Cir. 1992).**

The primary issue before the Fifth Circuit in Perron was
whether the bar under the LHWCA, §933(i), for suits against a co-
employee likewise applied to the respondeat superior action
before that court filed by the plaintiff against his co-
employee's employer. 970 F.2d at 1410. The Fifth Circuit
affirmed the district court's granting of summary judgment in
favor of the employer. Id.

In Perron, the Court examined a fact scenario similar to
that before this Court. In that case, the plaintiff worked for
D&C nominally and was injured while working on a Gulf Oil
production platform when he slipped and fell because of oil left
on the platform by Michael Lee, a direct employee of Bell
Maintenance. The plaintiff filed suit against Gulf Oil ("Gulf")
and Bell Maintenance ("Bell"). Gulf was dismissed on summary
judgment based on the district court's determination and the
Fifth Circuit's affirmation of the plaintiff's status as Gulf's
borrowed employee.

Bell Maintenance subsequently filed a motion for summary
judgment. The Fifth Circuit affirmed the district court's
dismissal of Bell and stated that "[i]n sum, Perron and Lee were
co-workers in every meaningful sense of the term. And because
they were borrowed servants/co-employees of the same employer
(Gulf), *a fortiori*, they were 'persons in the same employ' under

-51-

§933(i)."  Id. at 1412.

In Perron, the plaintiff contended that §933(i) immunized only the employer of the injured employee.  Id. at 1411.  The Fifth Circuit corrected this assumption and stated that, "Section 933(i) does not protect employers; it protects negligent co-employees."  Id. at 1412.  The Court then clarified the borrowed employment issue now before this Court.  The Court stated:

> A borrowed servant becomes the employee of the borrowing employer, and "is to be dealt with as the servant of the [borrowing employer] and not of the [nominal employer]." In Ruiz v. Shell Oil Co., our court adopted the borrowed servant rule for the LHWCA.  And borrowed servant status is a question of law.

Id. at 1412 (citations omitted).  This Court has already determined that both LeMaire and Phillips were the borrowed employees of Texaco.  Following the reasoning of the Fifth Circuit in Perron and based on the findings of this Court, LeMaire and Phillips were "persons in the same employ" under §933(i).  Therefore, this Court finds they were co-employees of Texaco at the time of plaintiff's alleged accident.  As LeMaire and Phillips were co-employees it follows, under Perron, that Phillips should be dealt with as the servant of Texaco, and not of D&C.  Id.

After determining the employment status of the plaintiff and Lee in relation to each other and the borrowing employer, Gulf Oil, the Fifth Circuit then explained the next step in the analysis.  The Court stated the issue as follows:

> Given that [the plaintiff] is barred by §933(i) from

-52-

bringing an action against Lee, at issue is whether [the plaintiff] can bring this respondeat superior action against Bell, Lee's nominal employer. Consistent with the LHWCA's comprehensive scheme, [the plaintiff] is barred from doing so.

Id. Adhering to the Court's reasoning in Perron, this Court must next address the issue of whether LeMaire can bring a respondeat superior action against D&C, Phillips' nominal employer. The Fifth Circuit has stated that bringing such an action against a co-employee's nominal employer would not be consistent with the LHWCA's comprehensive scheme. Id. Thus, the Fifth Circuit states, the plaintiff is barred from bringing this respondeat superior action. Id. Accordingly, this Court finds that to allow LeMaire to bring a respondeat superior action against D&C, Phillips' nominal employer, would not be consistent with the LHWCA's comprehensive scheme. Therefore, plaintiff is barred from bringing this respondeat superior action against D&C.

Finally, in Perron, the plaintiff contended Louisiana tort law governed his suit against Lee's nominal employer, defendant Bell, under the OCSLA. The Fifth Circuit addressed the plaintiff's OCSLA argument and held that "[s]ection 933(i) provides that LHWCA payments 'shall be the exclusive remedy to an employee when he is injured ... by the negligence or wrong of any other person or person in the same employ.' State law is therefore, preempted by §933(i) in this instance." Id. at 1413-14.

In the case *sub judice*, plaintiff contends that the OCSLA

-53-

requires state law regarding third party negligence, immunity and damages to apply to plaintiff's action against D&C. However, this Court finds that Perron dictates otherwise. The Court in Perron found Louisiana law regarding third party negligence and immunity to be inconsistent with §933(i) as it applied to the plaintiff's action against his co-employee's nominal employer. Id. Therefore, this Court finds Louisiana law regarding third party negligence and immunity to be preempted here as well.

Defendants assert, and this Court agrees, that the facts before this Court are "on all fours" with Perron. Thus, §933(i) applies and precludes the application of any Louisiana tort law principles to plaintiff's action against Phillips and plaintiff's respondeat superior action against Phillips' nominal employer, D&C.

## Conclusion

Based on the facts provided this Court regarding the borrowed servant status of LeMaire and Phillips and pursuant to the application of the nine Ruiz factors as discussed above, this Court finds that both LeMaire and Phillips were borrowed servants of Texaco. As both LeMaire and Phillips were borrowed employees of Texaco, under §933(i) and Perron, it necessarily follows that LeMaire and Phillips were "persons in the same employ," and therefore, co-employees.

Considering that both LeMaire and Phillips are co-employees/ borrowed servants of Texaco, Phillips and D&C, Phillips' nominal

-54-

employer, should be dismissed as a matter of law.  Under the LHWCA, LeMaire is barred from bringing any action against Phillips as he is LeMaire's co-employee.  D&C, as Phillips' nominal employer, is not vicariously liable to LeMaire for the alleged negligence of Phillips.  Rather, Phillips is to be dealt with as the servant of Texaco.  This Court must apply the LHWCA consistently.  Accordingly, the Court finds that §933(i) precludes the application of the inconsistent Louisiana tort law principles under which LeMaire seeks recovery.

Thus, this Court has determined that factors 1, 2, 4, 5, 6, 8 and 9 favor a finding of borrowed employee status as to LeMaire and that all factors, except 3, favor a finding of borrowed employee status as to Phillips.  In accordance with the Fifth Circuit's ruling in Billizon, this Court finds that despite the uncertainty of the facts relating to factor three, the remaining factors support, and the evidence provided this Court establishes, that LeMaire and Phillips were borrowed employees of Texaco.  Under §933(i) and Perron, this Court also finds that LeMaire and Phillips were co-employees in the same employ within the meaning of §933(i) of the LHWCA.  As a co-employee, LeMaire cannot maintain a tort action against Phillips.  As D&C is Phillips' nominal employer and, under Perron, is not vicariously liable for Phillips' alleged negligence, LeMaire cannot maintain a tort action against D&C.  Accordingly, this Court GRANTS the Motion for Summary Judgment [doc. #37] filed on behalf of

defendants, Danos & Curole Marine Contractors, Inc. and Charles Phillips dismissing the complaint of Shawn LeMaire against D&C and Phillips.


UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

SHAWN LEMAIRE, ET AL               CIVIL ACTION NUMBER: 98-0051

VERSUS                              JUDGE DOHERTY

DANOS & CUROLE MARINE           MAGISTRATE JUDGE METHVIN

CONTRACTORS, INC., ET AL

### O R D E R

Considering the foregoing Memorandum Ruling;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment [doc. #37] filed on behalf of defendants, Danos & Curole Marine Contractors, Inc. and Charles Phillips dismissing plaintiff Shawn LeMaire's complaints against Danos & Curole Marine Contractors, Inc. and Charles Phillips is hereby GRANTED.